And we'll proceed with the next argument on appeal. Kenneth Flick v. Attorney General, Department of Justice. Alan Gura is here for the appellant. Tylynn Trayer is here for the government. And Mr. Gura, are you ready to proceed with your argument? Yes, I am, Your Honor. Thank you. You may rise. Thank you, Your Honor. Good morning and may it please the Court. Alan Gura for the appellant, Kenneth Flick. As the government acknowledges, there are, quote, outer limits on Congress' authority to identify crimes that warrant disarmament. Those limits are imposed not by Congress' conscience or sense of self-restraint, but by the Constitution. And taking Mr. Flick's allegations at face value as required in a motion to dismiss, those limits are exceeded here. Accordingly, the district court's order dismissing the case should be reversed. This case turns on three principles of law. The first two are well-settled and hopefully require very little discussion. The third one, however, raises significant matters of first impression, so I'll focus most of my arguments on that. To begin, simply put, there is a difference between facial and as-applied challenges. These are not the same thing. Statutes can have a plainly legitimate sweep. They'd be unconstitutional in a particular context. As the Supreme Court has instructed, a statute's facial validity does not answer claims that the statute is invalid in some specific application. And so courts typically dismiss facial challenges to Section 922G1 out of hand. But as-applied challenges to this provision have produced very different results. Second, courts can and must decide only the cases that are before them. Courts cannot announce precedent, especially constitutional precedent, that extends beyond the cases and controversies at hand. Accordingly, as this court summed up in U.S. v. Fifer, questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedent. That rule disposes of the government's assertion that U.S. v. Rozier foreclosed individualized as-applied challenges. Mr. Rozier, a career criminal, never raised an individualized as-applied challenge to Section 922G1. And this court could not, and in fact did not, so far out beyond the pleadings as to foreclose all such challenges brought by other people. Rozier complained that he should be able to have a hand- Counsel, this is Judge Wilson. I'm looking at the last paragraph of our opinion in Rozier. And we said we find Section 922G1 is a constitutional restriction on Rozier's Second Amendment right. But this is the important part of the opinion. We say the circumstances surrounding Rozier's possession of a firearm in violation of Section 922G1 are irrelevant. So why aren't we bound by our decision in Rozier when we rejected, in effect, an as-applied challenge to the constitutionality of Section 922G as a violation of the Second Amendment? Well, Rozier merely argued, Your Honor, that because Mr. Heller wanted to have a gun at home, that he should be able to have a gun at home. And the court was responding to that assertion. The court was simply responding to the argument that what Mr. Rozier would do with the arm is irrelevant because he actually falls within the disqualified class. And the court stated that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment. And that's as much as the court held. The court held that the statute itself is a valid statute. There was no question, however, as to whether or not Mr. Rozier had distinguished himself from the class. He never argued that he somehow stood apart from that class and that the considerations that are generally valid as to fellow members of his class somehow do not apply to him. He simply never raised that type of case. I would say that the money quote, as it were, of Rozier is when the court- Counsel, this is Judge Corrigan. Following up on Judge Wilson's question, I'm not sure I'm understanding the distinction between a facial and as-applied in this context. Isn't really any time a convicted felon is challenging this law and saying that they should be allowed to carry a firearm notwithstanding their felony conviction, aren't they necessarily making an as-applied challenge based on their own individual circumstances? I mean, they're not really interested in having the entire law declared unconstitutional in all its applications. They're just interested in having it declared unconstitutional as applied to them in their own circumstances. And so I'm not sure why the distinction between facial and as-applied helps you in this situation. Okay, Your Honor, Mr. Rozier argued, we looked up his pleadings, he argued that after Heller's section 922G1, and I'm quoting here from his second motion for judgment of acquittal, is an unconstitutional restriction of the fundamental constitutional right to possess a handgun inside the home. And even if we were to take that as some kind of handgun-in-the-home exception to 922G1 such that perhaps it's valid as to felons who want to possess a rifle inside the home or felons who want to walk around in public with some type of firearm, that holding would only then apply to that particular as-applied challenge. There was nothing in Rozier's argument and nothing in the court's decision that said this section, unlike all other statutes, is somehow immune from as-applied challenges. People can always come up with new as-applied challenges and say, well, under our particular circumstances that Congress could not have foreseen, this statute does not have a constitutional application. And so Mr. Rozier said nothing to distinguish himself from other felons, and this court held that the statute is constitutional, that it is a constitutional avenue to restrict the Second Amendment right of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class. There was no attempt in Rozier to distinguish the defendant in that case from the class of people who are felons. Courts throughout the country have wrestled with this question. Most of them, as you've seen our pleadings, have held that as-applied challenge. I guess my question is why wouldn't Rozier's reasoning apply equally in an as-applied challenge as it applies to a facial challenge based on that part of the opinion that I quoted initially? Rozier's reasoning cannot anticipate other as-applied challenges. Even if it is an as-applied challenge, the fact is that Rozier never brought to this court's attention any sort of argument or theory that there's a constitutional constraint upon the felon prohibition. Heller itself, which this court followed in Rozier, tells us that the felon prohibition is presumptively lawful. Well, as courts typically have held in the wake of Heller and even before, language like that means that the presumption can be overcome. The presumption is overcome in a constitutional case when the predicates that would allow disarmament do not exist. Historically, traditionally, that predicate has been violence. Mr. Rozier could not claim that he was a responsible law-abiding citizen. His record is quite severe, and so he never made that argument. But Heller right there tells us that it is a presumptively lawful prohibition, and the presumption is one that can be overcome when the appropriate factors are present as courts throughout the country have held. There's only been perhaps one circuit, the Tenth Circuit, that has clearly foreclosed as-applied challenges. Most of the other courts have been perhaps all over the place in terms of how they proceed to evaluate such as-applied challenges, but they recognize that we must be able to have as-applied challenges to this prohibition. Otherwise, you'd have a situation where Congress can redefine the scope of a fundamental constitutional right. Congress can pass a law felonizing some activity or setting a sentencing range for some activity, and thereby deprive people of a fundamental right. But fundamental rights do not depend for their scope on the last election. Fundamental rights depend upon whatever the framers understood those rights to mean. We have to look at text, tradition, and history to see what is this right to arms. This is Jill Pryor. Let's suppose we accept your argument that we're not bound by Rousier. The First Circuit in Torres-Rosario did not foreclose as-applied challenges, but it worried that, quote, such an approach applied to countless variations in individual circumstances would obviously present serious problems of administration, consistency, and fair warning, end quote. What's your response to that concern? My response to that concern is twofold. First of all, the Constitution obligates and the Declaratory Judgment Act obligates courts to resolve these questions, and sometimes the questions are difficult, and for certain there are going to be hard questions, but those are the questions that the Constitution and the Declaratory Judgment Act require the courts to resolve. Second, I don't believe that you're going to have necessarily an explosion of cases. We have not seen an overwhelming number of cases brought, for example, in the Third Circuit in the wake of Bindura, and if there were a lot of cases that were brought, if we were to have some sort of large- Can you clarify what you're saying here? Sure. Then there are several ways it could be answered. First of all, the government can do a better job not wasting resources on going after cassette copiers and other people who don't provide any risk, and if the situation continued and it became a real burden to the courts, then Congress could also legislate more narrowly in this area. Congress has expanded the prohibition. For example, domestic violence misdemeanors are now prohibited. They can also narrow the prohibition and say, look, we're focusing on crimes of violence, not on cassette copying. How would you- This is- Go ahead, Judge Pryor. I was just going to ask permission to ask another question. Counsel, you mentioned the Bindura case. In that case, the bare majority holding was that-I think the only part that garnered a majority- was that Section 922G is not unconstitutional as applied to persons convicted of serious crimes, regardless of the passage of time since the crime or evidence of rehabilitation. I'm curious, would Mr. Flick's challenge succeed under the majority's reasoning in Bindura? Yes. I mean, he committed a pretty serious crime, and several circuits have said that theft and fraud-type crimes are serious crimes. Okay. The serious crime portion of Bindura garnered three votes by Judge Ambrose's portion, and, in fact, the Third Circuit is split constantly about which part of the opinion is controlling, and hopefully they'll resolve that. However, Judge Ambrose's test for serious crime sets out four factors that- not one of them is dispositive, but they should each be looked at to sort of reach a balance as to whether or not a crime is serious. And the four factors are cross-jurisdictional consensus, the severity of the sentence, the qualification- I mean, the classification of the crime. If we were to look at these factors, we could see that we don't have a- Those factors, you could find nonviolent felonies that meet all of those factors, couldn't you? Yes. The distinction we claim is not violence or nonviolence. There are people who claim that the act itself is what counts, whether it was violent or not. We actually look to dangerousness. There are some violent- There are some nonviolent activities which are still indicative of danger, such as with a firearm, for example. Somebody who is convicted of transporting drugs, well, we know that people who transport drugs may oftentimes secure their business with gun violence, and so we can prevent that type of action from allowing further- This is Judge Wilson. That would be a pretty heavy burden on the courts, wouldn't it, if we permitted as-applied challenges to dispossession statutes as a violation of the Second Amendment? I wonder what criteria would we use to distinguish a felon from a nonviolent felon? Your Honor, the criteria- How would you answer that? I would answer that quite simply, Your Honor. The criteria is not necessarily whether a particular felony was violent. Obviously, if a felony was violent, then that goes a very long way towards sustaining the prohibition. But the question is whether the person before the court is, as Heller instructed, a law-abiding, responsible citizen. And there are many crimes out there that qualify for imprisonment of over one year, which do not remotely implicate any sort of public danger. Public danger is a constitutional standard. That's the historic scope of the Second Amendment. The Second Amendment allows-secures people's right to keep and bear arms, but it's always been understood as being limited by considerations of public safety. So we can disarm people who are dangerous. The courts make safety determinations all the time. When courts decide whether to extend or revoke bail, when courts decide whether to place children in one parent's custody or the other, or when courts engage in sentencing decisions, these are essentially judgment calls, and that's why we have judges. We don't have a system where we say, well, questions are fairly hard, and therefore we're simply not going to enforce constitutional rights and we're not going to have any kind of judgment exercised. I mean, it's- This is Judge Wilson again. Right now there are over 3,000 federal crimes. So if we were to accept your argument, that would be a difficult burden on the courts to distinguish violent felonies from nonviolent felonies. And would you consider the wire fraud statute to be a violation of the wire fraud statute to be a violent felony? I would not consider the violation of the wire fraud statute to be a violent felony. What if the facts involved sending a wire communication across state lines that would violate the statute and the communication contains a threat? In that case, then the challenger would well lose, because the court could say that even though the act itself was nonviolent, it nevertheless was part of a violent course of conduct. It threatened violence and it indicates a character which poses a danger to public safety. And we're not going to wait for a person who threatens violence to go ahead and actually achieve the tools by which he can actually affect violence against people. And so that's the type of case that I don't think would be very difficult for the courts. I don't think anyone would bring such a case. If they were, I don't think it would waste too much time at any level. But we do also have a lot of- But you're saying that we wouldn't look only at the crime. We'd have to look at the circumstances of that. I mean, we wouldn't look only to the crime of conviction. We'd have to also look at the individual circumstances of that crime. And I think that goes back to Judge Wilson's question about the burden on the court. Well, courts are burdened all the time with making determinations. And sometimes the lines are not exactly clear. But we have to remember what's at stake here. We are talking about a fundamental constitutional right, which is being categorically deprived of people based on the length of potential sentence that they could have received. And we have a lot of crimes. As the Bindrup opinion noted, submitting recycled cans for an excessive deposit is a felony. Stealing books from the library over $100 could be a felony. Most of our recent presidents would be disqualified had they smoked marijuana in some states where simple possession is such that it triggers a statutory potential sentence that exceeds 922G1 parameters. I can tell you that in Massachusetts, for example, there are a lot of two-and-a-half-year misdemeanors. And so selling an unlicensed pig, a second offense, is a two-and-a-half-year misdemeanor, qualifies for 922G1. And here, of course, we have a very, frankly, ridiculous set of circumstances. We have a 70-year-old man who has been peaceful his entire life, and we are disarming him because he copied cassette tapes from the 1980s. I think if James Madison were here listening to this argument, we could explain to him the concept of cassette tapes, because, after all, the Constitution allows for the progress of science and the youthful arts. But I think he would be mystified by the notion that the federal government would expend its resources in disarming people who engaged in such conduct. We may need to fine-tune Section 922G1 if it becomes unworkable in light of Heller, but I don't know that that's even going to become the case. We have simply not seen courts struggle with these as-applied challenges as they've come up. Nonetheless, the courts are charged with resolving declaratory judgment actions. The courts are charged with resolving constitutional claims. And here we have a constitutional claim that the courts should resolve, even if it's hard, even if it's difficult sometimes, even if it takes time. If we have the resources and if we have made the decision that we're actually going to go ahead and enforce Section 922G1 to the hilt, then we should also take some time to make sure that not everybody who finds themselves subject to this law is subject to it as a constitutional matter. All right, Mr. Gura, I think we have your argument, and we'll let you have your reserved time as well. Thank you. And we'll hear from the government. Ms. Traer? Thank you. Good morning, and may it please the Court, Tylynn Traer for the government. Plaintiff is prohibited from possessing firearms because he was convicted of two federal felony offenses punishable by five and 20 years in prison. In Heller, the Supreme Court emphasized that nothing in its opinion cast doubt on longstanding prohibitions on the possession of firearms by felons. It identified the Second Amendment right as belonging to the law-abiding and responsible, and it described this prohibition as falling within an exception to the right. Now, applying Heller, neither this court nor any other court of appeals has held Section 922G1 unconstitutional as applied to an individual convicted of a felony, much less a federal felony subject to 20 years imprisonment. And no court has adopted the kind of standardless, holistic, individualized approach that plaintiff asked this court to adopt. To the contrary, this court in Rozier held that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment. Plaintiff would ask this court to overrule Rozier, but as the panel noted earlier, of course this panel was bound by that decision. Rozier, in fact, argued that his case paralleled the facts in Heller, and he put forward his personal motivations that he sought to possess a handgun for reasons of self-defense in the home. Now, this court in Rozier cited to Heller for the proposition that, again, like most rights, the right secured by the Second Amendment is not unlimited. And this court, I'm just going to read again because I think this language is so important pursuant to the panel's earlier discussion. Again, the court explained, quote, this language suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment. And citing to that language in Heller, the court affirmed the permissibility of categorical prohibitions on the right to bear arms, and the court held that statutory restrictions such as 922G1 are a constitutional avenue to restrict the Second Amendment right of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class. And that reasoning, as the panel noted earlier, would apply equally to plaintiffs here. Now, I also wanted to address something my friend on the other side raised. I know that he's argued here this morning that as-applied challenges have produced very different results from facial challenges that have been brought in the different courts of appeals. And that's simply not the case. If this court were to endorse plaintiff's theory, it would make it the first court of appeals to sustain a successful as-applied challenge brought by an individual convicted of a felony. And even those circuits that have left the door open to some hypothetical as-applied challenge in the future, when actually confronted with such a challenge, have ruled, as this court ruled in Rozier, that Section 922G1 is a permissible restriction on the right to bear arms. Most recently, the D.C. Circuit in Medina held as much and confirmed there that individuals... Counsel, this is Judge Corrigan. If I were, as Judge Pryor did a few minutes ago, if we were to set aside Rozier for the moment and just look at the plaintiff in this case as a nonviolent person who was convicted of a crime many, many years ago that itself was not a dangerous crime, and who apparently has lived a law-abiding life, and under the Heller umbrella wants to have a firearm in his house for self-defense, isn't there a Second Amendment imperative here that has to be taken into account vis-à-vis 922? That's not the way the as-applied challenges operate in the Second Amendment context. Even setting aside the Rozier decision, though I don't think the outcome here is... I don't think whether or not that was brought as a facial as-applied challenge either. It's just positive of whether or not that opinion is controlling, because I think the language is very clear. But even setting Rozier aside, I think it's difficult to understand how under Heller, plaintiff's as-applied challenge would succeed, because Heller makes very clear that the historical scope of the right governs, and that historical scope has traditionally extended to law-abiding and responsible citizens. And by virtue of his crime of conviction, plaintiff necessarily falls outside of that class. So you don't agree with your opponent that James Madison would be mystified by all this? Well, I wouldn't make light of plaintiff's two felony convictions here, Your Honor. I think that they are essentially, at bottom, they are the type of theft and fraud crimes that have long been considered serious crimes at the time of the founding. I think they're the types of crimes that the Fourth Circuit in Hamilton v. Pelosi explained they're not merely errors in... and they're not merely regulatory misdemeanor offenses. They're significant offenses reflecting disrespect for the law. So we very much disagree with that characterization of plaintiff's offenses here. And I'd also like to briefly discuss some issues that came up surrounding the Binderup case in the Third Circuit. Plaintiff's offense would be considered a serious crime under the Third Circuit's Binderup opinion. Now, I know that case is a bit far afield, because the Third Circuit applies a special gloss on the plain terms of that statute, and the case, of course, involves misdemeanor offenses. But Judge Ambrose, in his plurality opinion, suggested that if an individual convicted of a felony were to bring a similar as-applied challenge, that the burden would be extraordinarily high and perhaps even insurmountable. So I do think that even Binderup would foreclose plaintiff's challenge there. And to Judge Pryor's earlier point, too, I know that Binderup is a very fractured opinion. I think the majority holdings have been... the ones joined by ten judges of the court have been distilled in a recent case, Holloway v. Attorney General, and that citation is 948 S. 3rd 164. But the majority holdings coming out of the Binderup opinion, it's not just that an individual is disqualified under the law of that circuit for having committed a serious crime, but it's also a rejection of this idea that evidence of rehabilitation or the passage of time is relevant when we're looking to whether or not an individual has distinguished himself from the class of citizens who historically have been barred from the right to bear arms. So, again, even though... and this is the only circuit court that has entertained the successful as-implied challenge, it has only done so in the context of a state-law misdemeanor, a very unusual case of a Pennsylvania misdemeanor punishable by, I think, five years' imprisonment when the court noted that that conduct wouldn't even have been illegal in many states. But even the court in that case made it very clear the plaintiff's offense would disqualify him from the exercise of Second Amendment rights as well. This is Jill Pryor. I have a question about the scope of Rozier. The language that you quoted referring to statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment. As I understand it, you're reading any and all circumstances to modify do not offend the Second Amendment. In other words, they do not offend the Second Amendment under any and all circumstances. Is that right? Yes, we read the language to foreclose exactly the type of as-applied challenge here because in Rozier, he was a non-violent felon. His previous felony convictions had included non-violent felony drug possession offenses. That language, I think, is pretty clear in applying and rejecting the type of challenge the plaintiff brings here. It stands, at the very least, for the proposition that both violent and non-violent felonies alike, that the legislature's ability to disarm both violent and non-violent felons is permissible under the Second Amendment. But couldn't that sentence also be read, couldn't that phrase, under any and all circumstances, be read to modify statutes disqualifying felons from possessing a firearm? In other words, the statute disqualifies felons under any and all circumstances. Plaintiff certainly argues as much, and we disagree. I do think, again, that in any event, the case is best read as the plaintiff there bringing an as-applied challenge. But I think we also have to consider that that holding in Rozier in our reading of that sweeping language, it best accords with the Supreme Court's decision in Heller, which again emphasizes that Section 922G1 is a permissible exception to the Second Amendment right, and it's because it accords with the historical contours of the right as extending to law-abiding and responsible citizens. And so I think that our interpretation of that language in Rozier is most consistent with the Supreme Court's statement, just as it's consistent with the other courts of appeals that have applied Heller to uniformly reject as-applied challenges brought by felons. And Judge, prior to your earlier point, I just wanted to note that the court's concern with the burden or how difficult of a task it might be to determine whether or not an individual might actually go on to commit crimes of violence or to misuse firearms. It is a very – I can't overstate the difficulty of that task, and I think that's only underscored by Congress's experience with Section 925C applications for relief from Section 922G1. Congress, of course, defunded that provision after finding that despite ATF agents going out into the field and conducting factual investigations, actually interviewing people in the field, that still too many mistakes were being made and firearms were being restored to individuals who went on to misuse them and to commit gun violence. So Congress found that – Congress defunded that provision after finding that those mistakes were still being made with devastating consequences. And so I think it stands to reason that courts who do not have the same level of resources as even the executive branch in conducting those field investigations would have a very hard time conducting the same analysis with an appropriate level of accuracy. You see, the only other thing I'd like to point out – I'd like to point this court to Plaintiff's Reply Brief, page 8. I think, again, this underscores the standardless nature of the inquiry that plaintiffs would have this court adopt. I know the plaintiff has mentioned this example of transporting drugs as a nonviolent act, but conceived in his reply brief that drug couriers might well stand ready to commit armed violence as a part of their trade, but that for some reason plaintiff's offense – we would not infer the same about plaintiff's offense, even though it similarly involves transporting illicit goods over a national border. And so there's simply no basis to understand how we might undertake that dangerousness inquiry that plaintiff proposes. And, in fact, that is why the Court of Appeals, who have considered the question, has uniformly rejected that position. And, again, if this court were to endorse plaintiff's theory advanced here, it would require this court to overrule Rozier to endorse that theory contrary to the Supreme Court's holding in power. So if there are no further questions… Well, you have two minutes left. You can use them if you'd like. Thank you. I think that that's everything that I'd like to address here this morning. I'm happy to rest on my brief unless the court has anything further that they'd like me to address. All right. I think we have your argument. Thank you, Ms. Traer. And we'll hear again from Mr. Gura. Thank you, Your Honor. The government makes much of the fact that no court has yet to find relief in a case brought, an as-applied case brought by a federal felon. What the government, however, glosses over is the fact that virtually all the courts have left the door open to such challenges, even if the felonies that they consider in the particular few cases that have yet come before the court didn't quite meet those courts' satisfaction. Courts are generally uncomfortable with the idea of saying that whatever is declared to be a felony, therefore, by that version alone… This is Judge Wilson. Let me ask you a question. Your client was convicted of illegally copying audio cassettes and smuggling them into the country? If he used a gun to assist him in smuggling the audio cassettes into the country, we don't know whether he had a gun or used a gun or not. But your argument is that he's a nonviolent felon. Couldn't he be considered a violent felon? Or even if he's a nonviolent felon, wouldn't he fall within the classification of persons that we would not want to, because of their status as a felon, not be permitted to own a gun? Your Honor, I don't believe my client actually transported physically the product. These came from Taiwan in a boat, I believe. They were packed in a container ship. This is not the case of a drug courier or somebody who's flying a small airplane into an airstrip somewhere or sneaking across the border. And we don't know anything about… We don't know whether a gun was used to smuggle the audio cassettes into the country or not, do we? I believe the gun was not used. He was basically on the phone with people. I mean, you don't usually use a gun to make a phone call or send a telegram. This is not something that involves the act of transporting contraband physically where you're trying to sneak by a border guard or evade your competitors. Yeah, I guess my question is, you can be convicted as a nonviolent felon but having used a firearm during the commission of a nonviolent felony, couldn't you? Yes, and if a firearm is used to commit a felony, then that is a strong indication that the person stands ready to commit unlawful violence and therefore that person has a very tough burden to get any sort of relief from 922 G1. Thankfully, Mr. Flick is not that type of person. And if he were, then that is something for the government to prove at trial below. This is something that on a motion to dismiss cannot be presumed. We cannot invent facts about some nefarious thing that Mr. Flick may have done. All we have before us is the complaints and the factual allegations which must be read in the light most favorable to Mr. Flick. And there's absolutely nothing in this record that would permit the court to dismiss the case on the supposition that Mr. Flick might be dangerous. Everything in the record is the contrary. And only one circuit, I believe it's only the Tenth Circuit, has gone as far as the government would like this court to go and preclude all possible theoretical challenges to 922 G1. All the other courts, and it's still early in the game. We've not had a whole lot of these cases. Heller itself is only barely over 10 years old. And yes, somebody has to be first. Somebody has to get a case which is extreme enough and really pushes. Counsel, this is Judge Corrigan. Can I ask you if we were to write an opinion in your favor, obviously Rozier would have to be addressed. And can you kind of precisely say what this court would say about Rozier in reversing the district court? The court would say that Rozier correctly upheld Section 922 G1 against the facial challenge or at the very least correctly upheld Rozier against an as-applied challenge with the as-applied qualification was possessing a gun in the home. However, the court never had before to claim that people might distinguish themselves based upon the fact that they are currently law-abiding responsible citizens of the type who are qualified to possess guns. Mr. Rozier never claimed that he could distinguish himself from the class on account of being a responsible law-abiding citizen. Heller's language juxtaposed these two concepts. On the one hand, we had felons in the mentally ill and people who are not responsible, and then we had people who were law-abiding responsible citizens, and Rozier was simply not a case that brought those two concepts into tension and into question. So Rozier did not address the question, and it's Pablo La Rosa, and the court can go ahead and do what every other court almost has done throughout the country, which is to say Heller tells us that the prohibition is presumptively lawful. That means the presumption must be susceptible to being overcome, and it's going to be overcome based upon the historic scope of the right. It contradicts what the government said during the argument, I'm sorry, but the historical record does not contain any evidence that the framers or their English antecedents knew anything about dispossessing felons from the possession of arms. Blackstone told us that a first-time felon was, quote, restored to all capacities and credits and the possession of his lands as if he had never been convicted, close quote, so long as the felon had undergone the ultimate punishment if the crime was one that's subject to what they called the benefit of clergy. And at the time of the founding, that was also the law here, as Judge Barrett in the Seventh Circuit told us in the Cantor case. She examined the record. Those who ratified the Second Amendment would not have assumed that a- Counselor, your phone has expired. Sorry, sorry. Counselor, I thought you're not quoting a majority opinion. You're quoting a dissent. Is that right? That is correct. That is correct, and, Your Honor, and dissents are written for a reason. They sometimes advocate the law in a way that should be considered by future courts. We're not bound here by the Seventh Circuit's majority opinion, but even the majority opinion did not foreclose in Cantor all as applied challenges. It was one that addressed particular facts in that case. All right. I think we have your argument, Mr. Gura. Thank you, Your Honor. Thank you very much. Thank you.